IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONGYU ZHANG,

        *Plaintiff,*

    v.

AAGGO, *et al,*

        *Defendants.*

Civil Action No. 2:25-cv-85

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Dongyu Zhang ("Zhang") seeks a preliminary injunction to enjoin Defendants AAGGO, aBu, Ackeree, Aflyko, BAIHUISHOP, CiCily, Contemporary Décor, DIYSTYLE, Domeca Collection, Eastdtree, ETJOY, EVERUI, GeazoyDirect, Guangzhou Lingguang Trading Co., Ltd, Gugusary, hezexinchenwangluokejiyouxiangongsi, Hoshowpee, Innewgogo, JHKKU, JHKKU-M, LMLFT, Lotupokon, Mazeann, MCA20241, Misitewu, MXGFT, NingXiStore, PENTELSHOP, RunningBear, Sletend, Sletend-Z, stasup, WOZO, xmf, ZhoLing, Zotfan, and ZZKKO (collectively, "Defendants") (ECF Nos. 2 and 46).[1]  He asserts that by promoting, selling, offering for sale, and distributing knockoff products bearing the Copyrighted Work, Defendants are infringing on Zhang's exclusive copyright and his ability to use it in the operation of his international copyright licensing business.  (ECF No. 2, p. 8).  For the reasons explained below, the Court holds that Zhang is entitled to preliminary injunctive relief and his motion will be granted.

---

[1] The Court already entered a preliminary injunction as to other Defendants on February 19, 2025.  (ECF No. 37).

# I.    STANDARD OF REVIEW

The grant or denial of a preliminary injunction is within the sound discretion of a district court. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (citation omitted)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The "status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Rather, such relief "should be granted only in limited circumstances." *Kos Pharms.*, 369 F.3d at 708 (citation omitted). A moving party "must establish entitlement to relief by clear evidence." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). Specifically, the movant must demonstrate:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Kos Pharms.*, 369 F.3d at 708; *see also Winter*, 555 U.S. at 20. The first two factors are "the most critical," and the moving party bears the burden of making the requisite showings. *Reilly*, 858 F.3d at 176, 179 (citations omitted). Once those "gateway factors" are met, a court should "consider[] the remaining two factors" and then "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179. In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and

conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing Fed. R. Civ. P. 52(a)(2)). This "mandatory" requirement of Federal Rule of Civil Procedure 52(a)(2) must be met "even when there has been no evidentiary hearing on the motion." *Id.* Nevertheless, at the preliminary injunction stage, "procedures [] are less formal and evidence [] is less complete than in a trial on the merits." *Kos Pharms.*, 369 F.3d at 718; *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting in parenthetical *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). The weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. A court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See, e.g.*, *Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On January 17, 2025, Zhang filed a complaint and a motion for (1) a temporary restraining order ("TRO"); (2) a motion to expedite discovery; (3) a motion for leave to serve process through electronic means; and (4) a motion for leave to file excess pages. (ECF Nos. 2, 3, 5, 7). On January 22, 2025, the Court entered a TRO granting Zhang preliminary relief, expedited discovery, and allowing him to serve Defendants by electronic means. (ECF No. 14). The TRO was then extended and set to expire on February 19, 2025. (ECF No. 23). Zhang

served Defendants notice of the lawsuit via electronic means as granted by the Court in the TRO. (ECF No. 26). Defendants filed their Response in Opposition to Plaintiff's Motion for Entry of Preliminary Injunction on February 24, 2025. (ECF No. 46). Zhang filed his Reply to Defendants' Response in Opposition to Preliminary Injunction on March 12, 2025. (ECF No. 52). Defendants filed a Corrected Response in Opposition to Plaintiff's Motion for Entry of Preliminary Injunction on March 20, 2025. (ECF No. 58).

Zhang, a citizen of the People's Republic of China, owns and operates an international artwork acquisition and licensing business. (ECF No. 2, ¶ 1). He asserts that he owns the copyright, registered in the United States Copyright Office ("Copyright Office"), to the Copyrighted Work at issue. (*Id.* at ¶ 3); (ECF No. 2-3). This Copyrighted Work is a piece of artwork that has been identified as a "colorful pattern with a fox." (ECF No. 2-3, p. 2). It was originally created by Russian artist Anna Guz on February 26, 2015. (ECF No. 2, p. 2). Zhang acquired the copyright to this piece from Ms. Guz on December 6, 2024. (*Id.* at p. 3). The Certificate of Registration ("Certificate") issued by the Copyright Office details that the artwork was completed in 2015 and first published on February 26, 2015, in the United States. (ECF No. 2-3, p. 2). The Copyright Office granted certification to Zhang on December 4, 2024. (*Id.*) Zhang has authorized online stores to use the Copyrighted Work in various product lines, especially for textiles and fabrics, which he expects to generate a considerable amount of revenue. (ECF No. 9, ¶ 8).

Defendants are individuals and business entities who, upon information and belief, reside and/or operate the Seller ID e-commerce stores in the People's Republic of China and other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. (ECF No. 2, ¶ 17). Zhang alleges that Defendants conduct business in and throughout the United

States, via Amazon, Temu, and Walmart online marketplaces, by the manufacturing, online advertising, offering for sale, importation, and distribution of products that incorporate infringing versions of his Copyrighted Work. (*Id.*); (*Id.* at p. 22-28).

Following Zhang's registration of the Copyrighted Work in December 2024, he identified numerous fully interactive e-commerce stores which were offering for sale infringing versions of the Copyrighted Work to consumers in the United States. (ECF No. 9, ¶ 11). Zhang allegedly conducted this investigation via the worldwide anti-counterfeiting program he operates to regularly investigate suspicious e-commerce stores. (*Id.* at ¶ 10).

## III.    ANALYSIS

### A. Defendants are subject to specific personal jurisdiction.

Under Fed. R. Civ. P. 4(e), the law of the forum in which a federal district court sits controls the analysis of personal jurisdiction under its long-arm statute. The extent to which a court may exercise that authority is governed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Pennsylvania's long-arm jurisdiction statute is codified at 42 Pa.C.S.A § 5322(a). The specifically applicable portions of this statute are as follows: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph: the doing by any person of this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit . . . or the shipping of merchandise directly or indirectly into or through this Commonwealth." 42 Pa.C.S.A § 5322(a)(1)(i) and (iii).

General jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for non-forum related activities when the defendant has engaged in "systematic and continuous" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). In the absence of general jurisdiction, a court may find and exercise specific jurisdiction over a non-resident defendant for forum-related activities where the "relationship between the defendant and the forum falls within the 'minimum contacts' framework" of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997). To establish specific jurisdiction, the plaintiff must satisfy the following three requirements: (1) the defendant "purposefully directed [its] activities at the forum"; (2) the litigation arises out of or relates to at least one of those activities; and (3) the court's exercise of jurisdiction would comport with traditional notions of "fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff v Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). The Supreme Court has observed that personal jurisdiction cannot be avoided merely because the defendant did not physically enter the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

When analyzing personal jurisdiction within the context of internet storefronts, a sliding scale framework exists that is proportionate to the nature and quality of commercial activity that an entity conducts over the internet. *Zippo*, 952 F. Supp. at 1124. At opposite ends of the spectrum are situations where a defendant clearly conducts business over the internet and where a defendant has simply posted information on an internet website which users can access in foreign jurisdictions. *Id.* In the first scenario, personal jurisdiction is proper; in the second, more passive scenario, personal jurisdiction is not proper. Then there is the middle ground occupied by interactive websites where users can exchange information with the host computer, and in

such cases, jurisdiction is determined by the level of interactivity and the commercial nature of the exchange of information on the web site. *Id.* When a consumer logs onto a server in a foreign jurisdiction, he is engaging in a fundamentally different type of contact than an entity that is using the internet to sell or market products or services to residents of foreign jurisdictions. *Id.* at 1125. Put simply, a plaintiff must be able to show "more than mere interactivity" with the website or storefront for the court to exercise personal jurisdiction. *BGSD, Inc. v. SPAZEUP, LLC*, No. 5:23-CV-4855, 2024 WL 688665, at *3 (E.D. Pa. Feb. 20, 2024); *see also Kloth v. S. Christian Univ.*, 320 F. App'x 113, 116 (3d Cir. 2008).

A company's conducting of electronic commerce with Pennsylvania residents constitutes the purposeful availment of doing business in the Commonwealth of Pennsylvania. *Zippo,* 952 F. Supp. at 1125-26. While courts in this circuit have not coalesced around a consensus view, the Court concurs with its sister courts finding that personal jurisdiction will not attach *absent any evidence of actual sales* to the forum state. *BGSD, Inc. v. SPAZEUP, LLC*, No. 5:23-CV-4855, 2024 WL 688665, at *4 (E.D. Pa. Feb. 20, 2024) (*citing Flipside Wallets LLC v. Brafman Grp. Inc.,* No. CV 19-5356, 2020 WL 1330742 (E.D. Pa. Mar. 19, 2020)).

Here the Court cannot exercise general personal jurisdiction over the Defendants. As the Defendants correctly point out, they have no offices or headquarters in Pennsylvania or within the Western District. (ECF No. 51, p. 3). Nor does Plaintiff allege facts establishing any pervasive or otherwise constant affiliation with Pennsylvania or the Western District of Pennsylvania ("Western District"). (ECF No. 46, p. 9). However, the fact that Defendants are not subject to the Court's general jurisdiction is not dispositive.

Alternatively, Defendants are subject to the Court's specific personal jurisdiction. In the context of internet storefronts, Defendants' storefronts do far more than simply post information

on a website which users can access in foreign jurisdictions. Defendants clearly conduct business over the internet because they operate multiple internet storefronts in which they place the infringing products for sale, invite users to browse and engage with their sites, and have made documented sales of the infringing products in a commercial nature. This suggests more than the "mere interactivity" which is required for courts to exercise personal jurisdiction in this internet storefront context.

Additionally, this case is distinguishable from *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003), which Defendants rely upon in their analysis. In *Toys "R" Us*, the court found that the defendant was not subject to personal jurisdiction because, among other reasons, no claim-related sales or shipments were made to Pennsylvania. (ECF No. 51, p. 4). Here, Defendants made sales to Pennsylvania residents, and more specifically, residents within the Western District, as evidenced by the receipts of sale within the JiaoWei Huang and Zhipeng Gao Declarations. "Numerous" claim-related sales and shipments of the infringing product at issue here were made within the Commonwealth of Pennsylvania, and specifically to Bellevue, Sunbury, Hanover, Pittsburgh, and Newtown, PA within the Western District. (*Id.* at pp. 4-6). Because Defendants made actual, documented sales to the forum, this constitutes the purposeful availment of doing business in the Commonwealth of Pennsylvania. Thus, the Court finds that Defendants are subject to its specific personal jurisdiction.

**B. Zhang has sufficiently demonstrated that he is likely to succeed on the merits of his underlying claim for copyright infringement.**

In order to obtain the requested preliminary injunctive relief, Zhang must demonstrate that he "can win on the merits." *Reilly*, 858 F.3d at 179. He must "show a *likelihood* of success on the merits (that is, a reasonable chance, or probability, of winning)." *Singer Mgmt. Consultants v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (*en banc*) (emphasis in original). This

"requires a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179.   To establish copyright infringement, Zhang must demonstrate (1) ownership of a valid copyright and (2) that Defendants copied protected material.   *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991) (citations omitted).

    1.   <u>Ownership of a Valid Copyright</u>

    "Certificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity and ownership of that material."   *Ford Motor Co.*, 930 F.2d at 290–91. A plaintiff's possession of a valid copyright registration certificate "creates a rebuttal presumption that the work is copyrightable and that [the plaintiff] has a valid interest."   *F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 510 (E.D. Pa. 2005) (citations omitted).   On a motion for preliminary injunction, a court must "determine whether a copyright registration has been successfully rebutted."   *Midway Mfg. Co. v. Bandai-Am., Inc.*, 546 F. Supp. 125, 139–40 (D.N.J. 1982) (citation omitted).

    Here, Zhang attached his Certificate of copyright registration for the "Colorful pattern with a fox" as Exhibit 1 to the Complaint.   (ECF No. 2-3).   The Certificate states that on December 7, 2024, the Copyright Office granted Zhang registration of the artwork with an effective date of December 4, 2024.   (*Id.*)   Therefore, this Certificate constitutes prima facie evidence of the validity and ownership of Zhang's copyright, and the Court must determine whether Defendants have successfully rebutted this presumption.

    Defendants argue that Zhang has failed to establish ownership in the asserted copyright, specifically, that Zhang has failed to show that he owns or is the exclusive licensee of at least one bundle of rights set forth in Section 106 of the Copyright Act.   (ECF No. 58, p. 6). Additionally, Defendants argue that Zhang is unable to prove exclusive ownership of the

copyright because he has failed to show that any legitimate rights were transferred to him from the original owner, Ms. Guz, in writing. (*Id.*). As Defendants themselves state, the Copyright Act restricts the set of people who are entitled to bring a civil action for infringement to those who qualify as 'the legal or beneficial owner of an exclusive right under a copyright.'" (ECF No. 58, p. 6) (quoting 17 U.S.C § 501(b)). The owner of a copyright can transfer ownership of the copyright by selling it or by exclusively licensing it, and exclusive licenses must be in writing. *MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir. 1991) (citing 17 U.S.C.A § 204(a)).

Zhang's Certificate of copyright registration itself states that the copyright was transferred to him, the copyright claimant, from author Anna Guz by "written agreement." (ECF No. 2-3, p. 2). The Court holds that the contents of this official Copyright Office certificate sufficiently establish that Ms. Guz transferred copyright ownership to Zhang by written agreement, as is required by law for the transfer of an exclusive license. Furthermore, Ms. Guz declared under oath that "on December 6, 2024, Dongyu Zhang acquired one hundred percent (100%) in and to all rights, title, and interests of the Asserted Work in the United States, throughout the world and throughout the universe, as well as all other rights . . . any and all causes of action for infringement of the same past, present and future." (ECF No. 51-1, p. 1). Defendants cite no facts in the record that contradict the above information. Thus, the Court finds that Zhang has shown at this stage that he holds exclusive ownership of the copyright in question.

2. <u>Unauthorized Copying of Protected Material</u>

Since direct evidence of copying is rarely available, it may be inferentially proven by demonstrating that someone who had access to a copyrighted work used material substantially

similar to the work in a manner that interferes with a copyright owner's rights afforded under 17 U.S.C. § 106. *Ford Motor Co.*, 930 F.2d at 291 (citations omitted). "Substantially similar" is broken down to an extrinsic test and an intrinsic test. *Id.* The extrinsic test considers "whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." *Id.* (quoting *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986)). The intrinsic test, on the other hand, looks at whether "the copying was an unlawful appropriation of the copyrighted work" viewed from the perspective of a lay person. *Id.* (citations omitted).

Prior to Zhang's acquisition of the Copyrighted Work, Ms. Guz published over 1,500 works on her Shutterstock profile, which had great success on Shutterstock and elsewhere online. (ECF No. 2, pp. 2, 18). The Copyrighted Work was initially released on February 26, 2015, with Shutterstock No. 256087150. (ECF No. 51-1, p. 1). After Zhang acquired all the rights to the Copyrighted Work in 2024, it was thereafter removed from Shutterstock. (ECF No. 51, p. 7). However, due to its existence on the Shutterstock website for a period of nine years, Defendants had access to the Copyrighted Work via the internet. (ECF No. 2, p. 18). This clearly demonstrates that there were available avenues for Defendants to access the Copyrighted Work.

In addition to access, the artwork used on Defendants' products is also "substantially similar" to Zhang's Copyrighted Work. Looking at the Copyrighted Work and examples of Defendants' infringing listings side-by-side, the artwork is nearly identical. (ECF No. 2, p.12). All of the infringing listings, which vary by product type, include the same deep blue background, identical cartoon foxes in sitting, sleeping, and leaping positions, surrounded by flying pink birds and a variety of different flowers. (ECF No. 2, pp. 12-13); (ECF Nos. 2-4, 2-5,

2-6, and 2-7). There is no question that the two works are, at the very least, "substantially similar."

Finally, through Defendants' "promoting, selling, offering for sale and distributing" of their products bearing the copyrighted artwork, they have interfered with Zhang's exclusive rights afforded to him under 17 U.S.C § 106 to reproduce and distribute his Copyrighted Work as part of his copyright licensing business. Therefore, at this stage, Zhang has inferentially proven that Defendants copied his protected artwork in order to design and subsequently promote and sell their infringing products via the internet.

By demonstrating that it both has a valid copyright and that Defendants engaged in actual, unauthorized copying of its copyrighted material, the Court finds that Zhang is likely to succeed on the merits of his underlying copyright infringement claim. He has met his burden pertaining to the first prong of the preliminary injunction analysis.

### C. Zhang has shown that he will suffer irreparable harm absent the Court granting the requested preliminary injunction.

Zhang must next show that he "is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. He must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno*, 40 F.3d at 653. This potential harm must be "immediate"—it is insufficient to warrant preliminary injunctive relief "if the harm will occur only in the indefinite future." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (citation omitted). To obtain injunctive relief in copyright infringement suits, "a moving party must show that it will suffer irreparable harm that is causally attributable to the challenged infringement." *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019) (citations omitted).

If a plaintiff delays bringing its request for injunctive relief, a court must consider the length of the alleged delay and surrounding circumstances. *E.E.O.C. v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 81 (3d Cir. 1984). An unreasonable delay will negate the presumption of irreparable harm. *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 582 (E.D. Pa. 2005). For copyright infringement claims, the plaintiff's duty to file suit "does not arise until the plaintiff learns of the alleged infringement." *Id.* (citing *MacLean Assocs., Inc. v. William M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 780 (3d Cir. 1991)).

Defendants argue that their alleged acts of infringement occurred before the December 4, 2024, registration date of the asserted copyright, and that Zhang's failure to timely register his Copyrighted Work with the Copyright Office within three months after publication, or before the alleged infringement, bars his right to recover statutory damages under 17 U.S.C. § 504 for any period. (ECF No. 46, p. 29). Zhang states in his Complaint that he promptly registered the Copyrighted Work with the U.S. Copyright Office after purchasing the exclusive rights from Ms. Guz on December 6, 2024. (ECF No. 2, p. 3). The Copyright Office rendered its official decision as to the copyright registration on December 7, 2024, establishing that Zhang moved quickly to register the copyright with only one day between this decision date and the date he purchased the exclusive rights from Ms. Guz. (ECF No. 2-3, p. 2). Further, after he obtained the copyright registration, he conducted an internet inquiry and discovered that Defendants were selling products that displayed or consisted of his Copyrighted Work, despite having no license or authorization to do so. (ECF No. 2, p. 3). As to Defendants' arguments of delay, the Court finds that Zhang timely filed this lawsuit. The record demonstrates that Zhang did not receive actual knowledge of Defendants' allegedly infringing conduct until he had registered the Copyrighted Work and conducted his personal internet investigation, and that he filed his

Complaint shortly thereafter.  At this stage in the proceedings, the Court will not discredit what Zhang sets forth as the timeframe he attained actual knowledge and finds that he met his duty for filing suit upon learning of the alleged infringement.

Additionally, Zhang has met his burden by showing that he will not receive an adequate remedy at law.  As the Court discussed previously, Zhang's Copyrighted Work and the artwork used in Defendants' infringing products are, at the very least, substantially similar.  Such similarity causes market confusion, leading customers to potentially associate their interaction with a product to the wrong manufacturer of that product.  Thus, the harm that Zhang would be subjected to absent the entering of a preliminary injunction goes beyond just the lost profits.  The risk of irreparable harm to Zhang's reputation, value, business, and goodwill cannot be adequately remedied at law.

### D. The balance of equities weighs in favor of granting Zhang's requested injunctive relief.

The third factor requires consideration of whether, and to what extent, Defendants will suffer irreparable harm from the grant of a preliminary injunction.  *See Kos Pharms.*, 369 F.3d at 727.  The Court must then "balance the hardships" likely to be suffered by Zhang (if an injunction is denied) and by Defendants (if an injunction is granted), *id.* (citation omitted), and determine whether the "equities tip[] in [Zhang's] favor," *Winter*, 555 U.S. at 20.  "[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor." *Kos Pharms.*, 369 F.3d at 729 (citation omitted).

Defendants assert that the injunctive relief sought threatens monetary damage and loss in their sales that threatens greater harm to them than to Zhang.  They specifically emphasize that the current asset restraint in place from the TRO restricts the withdrawal of any funds from any of their accounts, regardless of whether they are derived from lawful sales or future incomes,

14

which strains their equity.  (ECF No. 46, p. 6).  Zhang presents the balance of equities with the harm to himself being "incalculable in monetary damages due to the impact of Defendants' copyright infringement . . . on his reputation and general goodwill among consumers" on the one hand, and Defendants losing their ability to profit from structuring "their business entity for the purpose of making it impossible for victims to identify the entity or entities responsible for the theft of intellectual property." (ECF No. 51, pp. 8-9).

The Court finds that the balance of hardships weighs in favor of Zhang.  Zhang, as the holder of a valid United States copyright, is afforded certain rights and protections upon registration.  These protections grant the copyright owner the *exclusive* rights to reproduce and distribute their work for sale.  17 U.S.C. § 106 (emphasis added).  A company establishes itself in the marketplace—through its reputation, value, and goodwill—on the assumption that it is in sole control of its intellectual property.  Thus, a copyright owner loses this control when an alleged infringer enters the marketplace and seeks to reap the benefits of the owner's work for its own gain.  Conversely, the harm that Defendants face will be losing the revenue stream created by selling their infringing products bearing the artwork that is substantially similar to the Copyrighted Work.  Defendants simply fail to demonstrate that they will be irreparably harmed by being enjoined from selling their products.

### E.  The public has an interest in enjoining Defendants' allegedly infringing activities.

The fourth factor asks whether "an injunction is in the public interest." *Winter*, 555 U.S. at 20.  "In exercising their sound discretion, courts of equity should pay particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  Nevertheless, "[w]eighing the public interest in preliminary relief is often fairly routine." *Kos Pharms.*, 369 F.3d at 730.  "As a

practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T*, 42 F.3d at 1427 n.8.

The public has an interest in the protection of intellectual property, as first recognized by the framers of the Constitution. *See* U.S. Const. Art. I, § 8, cl. 8 ("The Congress shall have Power … To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.") As discussed above, copyright law was enacted with the intent to give owners exclusive rights in their works. To not allow Zhang to enforce the protections he was granted upon his registration of the valid copyright would go against the public's interest and run afoul of the central purpose of copyright law. Therefore, the final factor also weighs in favor of granting Zhang's requested injunctive relief.

**F. The current asset freeze may be too broad.**

The parties addressed the amount of assets frozen as a result of the Court's TRO, raising concern that the amount frozen was disproportionate to amounts earned by Defendants relating to their sales of the allegedly infringing products. The Court believes that these concerns are well-founded. While the Court has the authority to restrain assets that have a close nexus with its exercise of equitable powers, *see Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), it cannot do so solely for the purpose of preserving assets upon which a plaintiff may execute in the future if it should prevail. Rather, the close nexus must be intertwined with the specific exercise of equitable jurisdiction undertaken with respect to the claims at issue in the case. *See id.* The Court holds that the blanket asset freeze currently in place goes further than permitted and beyond the close nexus required. Therefore, the Court

holds that all funds allegedly arising from and reasonably attributable to the sale of the allegedly infringing products shall be frozen—but no more. The record strongly suggests that the amounts frozen significantly exceed permissible amounts relating to the infringing products but are insufficient at this point to allow the Court to state with reasonable precision the amounts that so relate. Accordingly, the Court will order the parties to meet and confer to address whether they can reach a stipulated amount to be frozen. The frozen assets can be paid into either the local Court Registry or held in Defendants' counsel's IOLTA accounts pending the conclusion of this litigation. To the extent the parties are unable to reach a stipulation as to the amount to be frozen, the Court will schedule an evidentiary hearing.

## IV.    CONCLUSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. In this case, after balancing all four factors, the Court finds that Zhang has met his burden of demonstrating that he is entitled to the extraordinary relief of a preliminary injunction. Zhang's motion as to Defendants AAGGO, aBu, Ackeree, Aflyko, BAIHUISHOP, CiCily, Contemporary Décor, DIYSTYLE, Domeca Collection, Eastdtree, ETJOY, EVERUI, GeazoyDirect, Guangzhou Lingguang Trading Co., Ltd, Gugusary, hezexinchenwangluokejiyouxiangongsi, Hoshowpee, Innewgogo, JHKKU, JHKKU-M, LMLFT, Lotupokon, Mazeann, MCA20241, Misitewu, MXGFT, NingXiStore, PENTELSHOP, RunningBear, Sletend, Sletend-Z, stasup, WOZO, xmf, ZhoLing, Zotfan, and ZZKKO will be granted by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE